***NOT FOR PUBLICATION***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
ROBERT YOBE,                        :
                    Plaintiff,:     Civil Action No.: 15-3121(FLW)
                                    :
        v.                          :
                                    :              **OPINION**
RENAISSANCE ELECTRIC, INC. and:
ROBERT MACINTOSH,                   :
                                    :
                    Defendants.:
_____:

**WOLFSON**, **United States District Judge:**

    This employment discrimination suit, filed by Plaintiff Robert Yobe ("Plaintiff" or "Yobe"), alleges that Plaintiff's employer, defendant Renaissance Electric, Inc. ("Renaissance"), and his former supervisor, defendant Robert Macintosh ("Macintosh")(collectively, "Defendants"), violated New Jersey's Law Against Discrimination ("NJLAD") by terminating Plaintiff's employment in retaliation for Plaintiff taking a disability leave of absence. In the instant matter, Defendants move to dismiss the two-count Complaint on the basis that Plaintiff's allegations fail to give rise to any cognizable cause of action under the NJLAD. For the reasons set forth herein, Defendants' motion is **DENIED**.

**BACKGROUND and PROCEDURAL HISTORY**

The following facts are derived from the Complaint, and taken as true for the purposes of this motion. Plaintiff was employed by Renaissance beginning in 2001 as a "Journeyman Electrician" until he suffered an on-the-job injury. Compl., ¶¶ 7-9. Due to the nature of the injury, Plaintiff alleges that he took a four-year authorized disability leave of absence, i.e., from March 30, 2011 to February 13, 2015, during which he received workers' compensation insurance benefits. *Id.* at ¶¶ 10-12.

When Plaintiff was cleared to return to work, Macintosh, Plaintiff's supervisor, allegedly informed Plaintiff that Renaissance had "no job for Plaintiff," *see id.* at ¶ 14, when in fact Plaintiff saw an advertisement for a Journeyman Electrician position. *Id.* at ¶ 15. According to Plaintiff, after seeing the advertisement, Plaintiff communicated with Macintosh regarding the open position, and Macintosh responded to Plaintiff in a text message, "[t]o be honest your accident cost me an incredible amount in Workman's Comp insurance premiums for the past 5 years. I cannot afford that again as it would put me out of business. Please don't take it personally, it's just a business decision I've had to make." *Id.* at ¶ 17.

Plaintiff initiated this action by filing a two-count Complaint, asserting a retaliation claim under the NJLAD against Renaissance for terminating Plaintiff's employment after his

2

disability leave of absence ended. *Id.* at ¶ 22. Plaintiff also asserts an aiding and abetting claim under the NJLAD against Macintosh. Now, Defendants move to dismiss those claims.

## DISCUSSION

### I. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and internal quotations omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (internal quotations and citations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citation and internal quotations omitted)).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) (citations and quotations omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of

4

truth." *Id.* (citations and quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (citations, quotations and brackets omitted).

## II. NJLAD – Retaliation against Renaissance

In Count One, Plaintiff alleges that Renaissance "terminated Plaintiff's employment . . . after his disability leave of absence ended." Compl., ¶ 21. Plaintiff further avers that his leave of absence was a right protected by the NJLAD, and that Renaissance retaliated against Plaintiff by firing him for exercising that right. *Id.* at ¶¶ 22-25. On its motion, Renaissance takes issue with Plaintiff's pleadings; it argues, first, that Plaintiff's retaliation claim fails to state a claim. But, Defendant spends the bulk of its argument challenging this claim on the basis that retaliation for pursuing workers' compensation benefits is not a cognizable cause of action under the NJLAD.

As a preliminary matter, I disagree with Defendant's characterization of Plaintiff's claim in this context. As Plaintiff explains, his retaliation claim is based on the protected activity of taking a disability leave of absence, not on receiving

5

workers' compensation.[1] As such, I will focus on Plaintiff's allegations in that light.

I begin with a recitation of the relevant principles of law. There is no doubt that the NJLAD's overarching goal is the "eradication 'of the cancer of discrimination.'" *Fuchilla v. Layman*, 109 N.J. 319, 334 (quoting *Jackson v. Concord Co.*, 54 N.J. 113, 124 (1969)), *cert. denied*, 488 U.S. 826 (1988)). Striving to effectuate the will of the New Jersey legislature, the New Jersey Supreme Court has recognized the NJLAD's broad remedial purposes. *Lehmann v. Toys 'R' Us, Inc.*, 132 N.J. 587, 603-04 (1993); *see Quinlan v. Curtiss-Wright Corp.*, 204 N.J. 239, 258-59 (2010) (stating principles and statutory purposes).

Under the NJLAD, it is unlawful for employers to discriminate against an individual with respect to the terms and conditions of his/her employment on the basis of a protected characteristic, such as race, religion, age, sex and disability. N.J.S.A. 10:5-12(a). The statute also makes it illegal "[f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that

---

[1] While the parties dispute whether receiving workers' compensation can be a viable basis as a protected activity under the NJLAD, I need not address this question as Plaintiff, himself, maintains that his retaliation claim is premised on the protected activity of taking a disability of leave of absence. *See* Pl. Opp. Br., p. 4; Compl., ¶ 21.

6

person has filed a complaint, testified or assisted in any proceeding under this act . . . ." N.J.S.A. 10:5-12(d).

In that connection, to plead a *prima facie* case of retaliation, the employee-plaintiff must sufficiently allege that (1) he engaged in a protected activity that was known to the employer; (2) that he was subjected to an adverse employment decision; and (3) that there is a causal link between the activity and the adverse action. *Battaglia*, 214 N.J. at 547.

Here, in light of these elements, Plaintiff has adequately stated a claim of retaliation under the NJLAD. Defendant's argument is plain: that Plaintiff has not alleged any factual support for his retaliation claim, but rather, Plaintiff, in a conclusory fashion, alleges that he was terminated in direct response to his disability leave. In that regard, Defendant contends that Plaintiff's allegations paint too broad of a brush to survive Rule 12(b)(6) review. I disagree.

With respect to the first element, Plaintiff alleges that he engaged in the protected activity of taking disability medical leave. Renaissance challenges that such an activity is a protected right, without citing to any authority. Rather, it explains that under the plain language of N.J.S.A. 10:5-12(d), Plaintiff has not alleged that Renaissance coerced, intimidated, threatened or interfered with Plaintiff's decision to take a leave of absence. Defendant argues that to state a proper retaliatory claim,

7

Plaintiff must allege one of those actions on the part of Renaissance.

However, Defendant seemingly ignores the part of the statute where the NJLAD makes it an illegal retaliatory act, if an employer interferes with "*any person in the exercise or enjoyment of a protected right*." N.J.S.A. 10:5-12(d)(emphasis added). Indeed, taking a disability/medical leave is protected by the NJLAD. *Nusbaum v. CB Richard Ellis, Inc.*, 171 F. Supp.2d 377, 388 (D.N.J. 2001)(denying motion to dismiss because medical leave is protected activity under the NJLAD); *Boles v. Wal-Mart*, No. 12-1762, 2014 U.S. Dist. LEXIS 41926, at * (D.N.J. Mar. 26, 2014)(denying summary judgment because the NJLAD's "anti-retaliation provision now compels this Court to conclude that the requesting and taking of medical leave are protected activities under the NJLAD."); *cf Guinup v. Petr-All Petroleum Corp.*, 786 F. Supp. 2d 501, 514 (N.D.N.Y. 2011) ("[T]aking medical leave is a protected activity within the meaning of the ADA."); *Dove v. Cmty. Educ. Ctrs., Inc.*, No. 12-4384, 2013 U.S. Dist. LEXIS 170081, at *63 (E.D. Pa. Dec. 2, 2013) ("[N]umerous courts have recognized that a request for [and taking] a leave of absence for medical treatment may constitute a request for a reasonable accommodation under the ADA"

and thus constitutes a protected activity).[2] Accordingly, Plaintiff has sufficiently alleged the first element.

Next, Plaintiff alleges that Renaissance adversely subjected Plaintiff to an adverse employment decision of job termination, because Plaintiff took a disability leave of absence from March 30, 2011 until February 13, 2015. Further, as for causation, Plaintiff alleges that Renaissance "terminated Plaintiff's employment . . . in direct response to Plaintiff's protected disability leave of absence." Compl.,¶ 24. While Defendant suggests that this is not sufficient, Plaintiff supports his causation theory with the allegation that Plaintiff's supervisor, Macintosh, explained to Plaintiff that because his medical leave cost Renaissance "an incredible amount" in insurance premiums, the company cannot afford to rehire Plaintiff. *Id.* at ¶17. Although

---

[2] Defendant attempts to factually distinguish this case with those cases that I have just cited. But, as *Boles* makes clear, as a matter of law, the taking of a medical leave is a protected activity under the NJLAD. *Boles*, 2014 U.S. Dist LEXIS 41926 at *22-23. The court, there, held that "the requesting and taking of medical leave are protected activities under the NJLAD." *Id.* The court explained that the anti-retaliation provision of the NJLAD specifically prohibits employers from interfering with 'any right granted or protected by [the NJLAD].' N.J.S.A. 10:5-12(d). A disabled employee's right to a reasonable accommodation is one such rights." *Id.* at *23; *see, e.g.*, *Victor v. State*, 203 N.J. 383, 412 (2010)("Affording persons with disabilities reasonable accommodation rights is consistent with the [NJ]LAD's broad remedial purposes."). And, because a reasonable accommodation can take the form of a temporary leave of absence, *see* N.J. Admin. Code 13:13-2.5(b)(1)(ii), the *Boles* court found that taking a medical leave is a protected right under the NJLAD.

9

it is unclear whether the intent to terminate Plaintiff was based on a business reason, or some other insidious retaliatory reasons, at this pleading stage, it is certainly reasonable to infer that Renaissance allegedly retaliated against Plaintiff for taking a prolonged medical leave of absence, a protected activity under the NJLAD.[3]

Accordingly, I find that Plaintiff has sufficiently stated a claim of retaliation pursuant to the NJLAD against Renaissance. Defendants' motion in this regard is denied.

**III. NJLAD – Aiding and Abetting against Macintosh**

In Count II, Plaintiff asserts a claim against Macintosh for aiding and abetting the alleged retaliation under the NJLAD. Rather than challenging this claim on sufficiency grounds, Defendants argue that Plaintiff's aiding and abetting claim cannot lie because, under New Jersey law, Plaintiff cannot allege that Macintosh aided and abetted his own conduct.

To support its contention, Defendants refer this Court to the following trio of cases: *Newsome v. Admin. Office of the Courts of N.J.*, 103 F. Supp 2d 807 (D.N.J. 2000); *Seibert v. Quest Diagnostics, Inc.,* No. 11-304, 2012 U.S. Dist. LEXIS 42708 (D.N.J.

---

[3] Defendants submit that whether Plaintiff was an employee at the end of his disability leave is an open question. However, since Plaintiff alleges that he was indeed an employee at that time, the Court must take that allegation as true on this motion to dismiss.

10

Mar. 28, 2012); and *Putterman v. Weight Watchers Intern., Inc.*, No. 10-1687, 2010 U.S. Dist. LEXIS 85754 (D.N.J. Aug. 19, 2010). While, generally, those courts have agreed with Defendants' argument here, their decision conflicts with the New Jersey Appellate Division's more recent pronouncement in *Rowan v. Hartford Plaza Ltd.*, No. A-0107-11T3, 2013 N.J. Super. Unpub. LEXIS 766, 2013 WL 1350095, at *8 (App. Div. Apr. 5, 2013). Under that decision, a supervisor, like Macintosh, can be held liable for aiding and abetting his employer's wrongful conduct, even where the only bad conduct at issue is the supervisor's own conduct. 2013 N.J. Super. Unpub. LEXIS 766 at *8; *see Cardenas v. Massey*, 269 F.3d 251, 268 (3d Cir. 2001)("Under the LAD a supervisory employee may be liable for discrimination for aiding and abetting another's (the employer's) violation."); *see also Cicchetti v. Morris Cnty. Sheriff's Office*, 194 N.J. 563 (2008) ("individual liability of a supervisor for acts of discrimination or for creating or maintaining a hostile environment can...arise through the 'aiding and abetting' mechanism.").

In fact, the Third Circuit has predicted long ago in *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 126 (3d Cir. 1999), that the New Jersey Supreme Court would hold that, under the NJLAD, when a supervisor engages in "affirmatively harassing acts," he "flouts [his] duty" and "subjects himself and his employer to liability." *See Coulson v. Town of Kearny*, No. 07-5893, 2010 U.S.

11

Dist. LEXIS 3711, at *5 (D.N.J. Jan. 19, 2010); *Ivan v. Cnty. of Middlesex*, 595 F. Supp. 2d 425, 462 (D.N.J. 2009); *Danna v. Truevance Mgmt.*, Inc., No. 05-5395, 2007 U.S. Dist. LEXIS 53660, at *3 (D.N.J. July 25, 2007). Importantly, in recent years, following state lower courts, courts in this district have found that aiding and abetting one's own conduct is a sufficient basis for liability under the NJLAD. *Brown-Marshall v. Roche Diagnostics Corp.*, No. 10-5984, 2013 U.S. Dist. LEXIS 101179, at *20 (D.N.J. Jul. 19, 2013); *DeSantis v. N.J. Transit*, 103 F. Supp. 3d 583, 591 (D.N.J. 2015)("New Jersey courts have held that an individual can aid and abet, not only the conduct of another person, but that person's own conduct.").

While it is concededly an "awkward theory" to hold an individual liable for aiding and abetting his own conduct, it would thwart the NJLAD's broad and remedial purpose, and make little sense, to construe it as permitting "individual liability for a supervisor who encourages or facilitates another employee's harassing conduct, while precluding individual liability for the supervisor based on his or her own discriminatory or harassing conduct." *Rowan*, 2013 N.J. Super. Unpub. LEXIS 766 at *8. Accordingly, Defendants' motion to dismiss on this basis is also denied.

**CONCLUSION**

For the reasons set forth herein, Defendants' motion to dismiss is **DENIED**.

Dated: February 16, 2016	/s/ Freda L. Wolfson
	Hon. Freda L. Wolfson
	United States District Judge